UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

FRANK LUNA,
        Plaintiff,

vs.                                               CIVIL NO. 2:07-CV-12112

DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE. STEVEN D. PEPE.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant
                                              /

## Report and Recommendation

**1.    Background**

Plaintiff, Frank Luna, brought this action under 42 U.S.C. §405(g) to challenge a final decision of the Commissioner finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff and Defendant filed motions for summary judgment. Both motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is recommended that the Commissioner's motion for summary judgment be **GRANTED** and the Plaintiff's motion for summary judgment be **DENIED**.

**A.    Procedural History**

Plaintiff applied on February 9, 2005, due to a torn rotator cuff in his right shoulder (R. 49-51, 82). Plaintiff's application was denied on August 26, 2005 (R. 27-33), after which Plaintiff filed a request for hearing on September 21, 2005 (R. 34). Plaintiff appeared before Administrative Law Judge ("ALJ") Bennet S. Engelman for a hearing on April 4, 2006 (R. 185-

1

208). ALJ Engelman issued his decision denying benefits on May 12, 2006 (R. 22). The Appeals Council denied review on April 18, 2007 (R. 4-7).

**B.     Background Facts**

   **1.     *Plaintiff's Hearing Testimony and Statements***

Plaintiff was born on December 29, 1954, and was 51 years old at the time of the hearing (R. 186). Plaintiff completed high school, and reported $13,614.73 in 2005 income (R. 187). Plaintiff last worked on February 7, 2005, alleging total disability just a few days before he had surgery to repair a torn rotator cuff in his right shoulder (R. 187).

Plaintiff began working at GM Truck and Bus in the spray booth when he was 18 years of age (R. 189). He also worked in the body shop, spot welded, and was on the rivet line. Since 1996, Plaintiff was in the paint department where he acted as an inspector which included welding and sanding (R. 189-90). This work required lifting above his head (R. 191). Plaintiff claims that the injury to his right rotator cuff did not arise suddenly, but rather his rotator cuff wore out over time resulting in surgery in February 2005 (R. 194). Plaintiff stated that his shoulder pain was somewhat improved following his surgery, but he still cannot drive for very long (R. 195). He has reduced motion lifting his arm to the side or in front of his body (R. 196). Plaintiff can use an electric shaver, comb his hair, cut his food and tie his shoes (R. 196-97). Plaintiff has trouble lifting a gallon of milk with his right hand, cannot cut the lawn or shovel a sidewalk (R. 197).

Plaintiff believed he could not be a security guard because he cannot sit or stand long enough to perform such a job because the longest he can stand would be 20-25 minutes before his should begins hurting (R. 198). Plaintiff finds sitting uncomfortable, and sleeps on a recliner

2

(R. 199). Plaintiff no longer takes pain medication because he did not want to become addicted (R. 199, 201). He underwent physical therapy for 6 ½ months, and found it helped "to a certain extent" enabling a greater range of motion.

Plaintiff has pain and numbness in his left hand, but was not diagnosed with carpal tunnel syndrome (R. 200). Plaintiff spends his days sitting around and watching TV in a recliner chair with his feet raised and his right hand draped across his body (R. 200-01). Plaintiff's physician wanted to perform an injection and manipulation of his shoulder, but he did not undergo the procedure as his physical therapist stated that it would likely be of little benefit (R. 201-02). Plaintiff thought that his present state was the best recovery that he was going to have (R. 202).

## 2. *Medical Evidence*

On July 1, 2004, Wayne Good, M.D., noted that Plaintiff had a three-year history of significant right shoulder pain (R. 100-01, 103-19). A positive impingement sign and a magnetic resonance imaging (MRI) scan showed tendinitis and a partial rotator cuff tear (R. 100). On November 22, 2004, Anthony de Bari, M.D., recommended that Plaintiff undergo surgery to repair his right rotator cuff (R. 135). Plaintiff underwent surgery repairing his right rotator cuff, excision of right distal end and clavicle achomioplasty on February 2, 2005 (R. 140-41, 122-24). Two weeks after surgery, Dr. de Bari noted fair progress with some tenderness and good passive range of motion (R. 134). Dr. de Bari opined that Plaintiff would likely be able to return to work in approximately three months (R. 174). On February 24, 2005, Dr. de Bari conducted Plaintiff's two week post-surgery examination finding no infection or drainage and found that progress was "fair" (R. 134).

On March 7, 2005, Plaintiff reported that he had slipped a few days before and landed on

his right shoulder;[1] Dr. de Bari noted painful range of motion and some soft tissue swelling (R. 133). Plaintiff was deemed to be neurovascularly intact (R. 133).

In March and April 2005, Plaintiff reported that his pain was improving; range of motion was improved but still reduced (R. 131-32). Dr. de Bari noted significantly limited range of motion. Ultrasound showed a possible re-tear of the rotator cuff and Dr. de Bari advised a repeat MRI scan, which Plaintiff declined (R. 126, 129). On March 9, 2005, one month after surgery, Dr. de Bari found that Plaintiff's passive range of motion was painful and he is unable to forward flex or abduct the shoulder at all (R. 133). On March 25, 2005, at his six week check-up, Plaintiff had a limited range of motion, and may have a recurrent rotator cuff tear (R. 132). An April 15, 2005, fax sheet to Sportscare noted that Plaintiff should undergo 12-18 physical therapy sessions (R. 148). While improving, Plaintiff experienced pain with greater use of his left arm. On May 31, 2005, Plaintiff was again referred to Sportscare for Physical Therapy with the goal of increasing range of motion, strength and functioning while decreasing pain (R. 147). On June 2, 2005, Dr. de Bari recommended an ultrasound to determine if there was a return tear in the right shoulder. He concluded that Plaintiff could not return to work for at least another two months (R. 130). On June 29, 2005, Dr. de Bari recommended that Plaintiff continue physical therapy 2-3 times per week for the next 4-6 weeks to treat his right shoulder (R. 149).

On June 28, 2005, Plaintiff was scheduled to undergo shoulder surgery on November 4, 2005, with Dr. de Bari (R. 127, 142) because Plaintiff's right shoulder pain continued and his range of motion was still limited (R. 129). Plaintiff agreed to proceed with manipulation and

---

[1] On April 21, 2005, Dr. de Bari noted that Plaintiff fell out of his truck on March 4, 2005, landing onto his outstretched upper extremity (R. 131).

injection of the shoulder understanding the attendant risks.

On July 7, 2005, Dr. de Bari found Plaintiff's biceps and subscapularis tendons were intact and no full thickness tear was seen in the rotator cuff (R. 126). On July 13, 2005, the physical therapist assessed that Plaintiff's shoulder pain had increased, but his strength and range of motion had improved (R.165). Physical therapy notes from July and August 2005 reveal that Plaintiff experienced improved strength and flexibility in his right shoulder, but continued to report pain at a level six on a scale of one to ten (R. 164-65). August 2, 2005, notes from Dr. de Bari indicate that Plaintiff should continue physical therapy (R.154).

A state agency physician conducted a Physical Residual Functional Capacity Assessment of Plaintiff on August 24, 2005, and opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and lift no more than ten pounds total with his right arm (R. 155-63). The Assessment stated that Plaintiff "cannot return to his past work as he describes it because of limitation to his right arm, hand and shoulder due to rotator cuff injury;" however, it noted that Plaintiff has a light RFC "that does not significantly reduce the job base" (R.163). The physician also stated that Plaintiff could not do work above shoulder level on the right and should only use his right arm on an occasional basis (R. 156, 158).

Dr. de Bari scheduled manipulation and injection of Plaintiff's right shoulder for November 4, 2005, as noted in Plaintiff's hearing testimony, he decided not to go through with these procedures because his physical therapist told him they "probably" would not help (R. 201). On August 16, 2005, Dr. de Bari completed a General Motors Statement of Employee's Physician Form. He diagnosed Plaintiff with adhesive capsulitis on the right shoulder, precluding any right handed/shoulder work, and he expected that Plaintiff could "never" resume

substantial, gainful employment (R. 174-76). The physical therapist's August 30, 2005, re-assessment of Plaintiff found that his pain had increased, but his right shoulder strength and range of motion had improved (R.164).

On August 30, 2005, Dr. de Bari noted that Plaintiff complaint of numbness and tingling in both hands; Tinel's sign was mildly positive bilaterally and he recommended electromyographic ("EMG") testing (R. 168). September 14, 2005, EMG testing was normal (R. 180).

In March 2006, Dr. de Bari estimated that Plaintiff could lift no more than ten pounds and that he had a moderately limited ability to push or pull with his right arm (R. 182). He found no sitting and standing limitations. He believed that Plaintiff's right shoulder impairment would "disrupt a regular job schedule" approximately half the time (R. 182).

### 3. *Vocational Evidence*

Vocational expert ("VE") Judith Findora testified that Plaintiff's past work as a sander was classified as light and unskilled (R. 203). Plaintiff has no transferable skills. When asked to credit Plaintiff's testimony, VE Findora believed that Plaintiff's inability to walk and stand for long periods and his remaining in a recliner would preclude all employment (R. 204).

ALJ Engelman asked the VE Findora whether she could identify any jobs that could be performed by an individual with Plaintiff's age, education, and work experience, who had limited use of his right arm and shoulder such that he could not do work above shoulder level, had limited movement, could not lift more than ten pounds, and could not use the affected arm more than occasionally and needed a sit/stand option (R. 204). The VE testified that in the Lower Peninsula of Michigan there are at least 12,000 security guard and 3,000 usher/attendant

jobs which are characterized as light exertional (R. 205). There would also be 2,000 jobs as interviewers. Interviewers conducting face to face interviews would be categorized as light whereas phone interviewers would be considered sedentary (R. 206). Some interviewer jobs allow the employee to sit and stand at will.

When asked if a person who was required to sit in a recliner, feet above their hips and who needed to take more than typical daily breaks could perform any of these jobs, VE Findora responded that they could not nor could person whose pain was always rated a 7 because that person would not be able to concentrate on their work (R. 207). VE Findora clarified that none of the jobs she listed required work above the shoulder level.

### 4. **ALJ Engelman's Decision**

ALJ Engelman found that Plaintiff meets the disability requirements for insured status through the date of this decision, and he has not engaged in substantial, gainful activity since the alleged onset date of disability (R. 23).

Plaintiff's right rotator cuff tear is considered "severe" under 20 C.F.R. § 404.1520(c), but Plaintiff's impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. 18, 23).

The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible, and that he retained the RFC to perform light work involving a sit/stand option and only occasional use of the dominant right arm, and no work above shoulder level (R. 20, 23). ALJ Engelman determined that Plaintiff cannot perform his past relevant work, has no transferable skills, is an individual closely approaching advanced age, but that there were still a significant number of other jobs in the regional and national economy that Plaintiff could

perform including the security guard, usher/attendant and interview jobs identified by VE Findora (R. 21, 22, 23-24).

II.   **ANALYSIS**

A.   **Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[6]  A response to a flawed hypothetical

---

[6] *See, e.g.*, *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinburger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir.

8

question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

**B.** **<u>Factual Analysis</u>**

In his motion for summary judgment, Plaintiff asserts that ALJ Engelman erred as a matter of law in assessing Plaintiff's credibility and Dr. de Bari's medical opinion, and did not form an accurate hypothetical (Dkt. # 10, p. 6).

**1.** *Proper Use of Treating Physicians' Opinions*

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law.[7] The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527 [SSI § 416.927]. The regulation also limits the scope of the subject matters on which the Commissioner will give a treating source opinion greater weight. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically

---

1975).

[7]*See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d) [SSI § 916.927(d)]. *See also*, S.S.R. 96-2p. In those situations where the Commissioner does not give the treating physician opinion "controlling weight," the regulation sets out five criteria for evaluating that medical opinion in conjunction with the other medical evidence of record. Those five criteria are:

> (1) the length, frequency, nature and extent of the treatment relationship, including the kind and extent of examination and testing sought from specialists or independent laboratories;
> (2) the support ability of the medical opinion based on medical signs and laboratory findings, with better explanations being given more weight, and whether the opinion includes all of the pertinent evidence as well as opinions of treating and other examining sources;
> (3) the consistency of the opinion with the record as a whole;
> (4) specialty, with greater weight given to relevant specialists;
> (5) and other factors which tend to support or contradict the opinion.

*Wallace v. Comm'r. of Soc. Sec.* 367 F. Supp.2d 1123, 1133 (E.D. Mich. 2005).

The regulation also limits the subjects upon which the Commissioner must defer to a treating source opinion to "the issue[s] of the nature and severity of your impairment[s]." 20 C.F.R. § 404.1527(d)(2), [SSI § 916.927(d)(2)]. Under 20 C.F.R. § 404.1527(e) [SSI § 916.927(e)], the Commissioner will not defer or provide special significance to treating source opinions on certain subjects that are "reserved to the Secretary" which includes treating physician opinions on a claimant's disability under the Listing, on residual functional capacity or a general and conclusory statement of disability or inability to work. Thus, while deferring in part to the court-created "treating physician rule," the Commissioner's 1991 regulation in large measure rejects prior circuit case law that gave enhanced weight to treating physician opinions

regarding disability under the Listing, on residual functional capacity, or on general statements of disability.

In 20 C.F.R. 404.1513(b) & (c) and S.S.R. 96-5p the Commissioner distinguishes between a treating source "statement about what [a claimant] can still do despite . . . impairment(s)" and the formal administrative finding on "residual functional capacity" (RFC). The former is a physician's opinion on either physical or psychological capacities for work related activities. When based on the medical source's records, clinical and laboratory findings, and examinations it can be considered a "medical opinion" under §404.1527(a)(2) because "what [ a claimant] can still do despite impairment(s)" and "physical or mental restrictions" are medical judgments about the nature and severity of [a claimant's] impairment(s)" and thus fall within the Commissioner's definition of "medical opinion." Yet, because these medical opinions are different from the formal findings under §404.1527(e) on "disability" and on "residual functional capacity" -- which are subjects reserved to the Commissioner and which may be based on additional evidence in the record -- the Commissioner need not defer to the treating source opinion except in the narrow case where the treating source opinion is to be given controlling weight under 20 C.F.R. §404.1527(d)(2), i.e. the treating sources' opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Thus, under S.S.R. 96-5p, a generalized statement that the claimant is unable to work is too broad to qualify as a medical opinion binding on the Commissioner.

In the present case, the ALJ deferred, or at least treated with special significance, Dr. de Bari's diagnosis of a rotator cuff tear as well as the subsequent post-operative analysis (R. 19).

Indeed, ALJ Engelman adapted these impairments in making his determination (R. 20-22). Plaintiff argues that the ALJ was also required to give deferential weight to Dr. de Bari's opinion that Plaintiff was unable to perform past relevant work, and is "disabled" (R. 20). Such a determination is for the discretion of the Commissioner. 20 C.F.R.§ 404.1527(e)(1); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 800 (6th Cir., 2004)(A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner.); *Wallace,* 367 F. Supp.2d at 1133. *See* 20 C.F.R. § 416.927(d) (providing that poorly supported opinions are entitled to little weight); *Bogle, v. Sullivan*, 998 F.2d 342, 347 (6th Circ. 1993) ("[T]reating physician's opinions ... receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

ALJ Engelman considered Dr. de Bari's diagnosis in his decision noting that Plaintiff experiences discomfort and pain; however, allegations that such pain precludes all work is not consistent with objective medical evidence and the absence of more aggressive treatment (R. 20). Bolstering the ALJ's conclusion that Plaintiff can perform some work are the facts that Plaintiff did not use additional pain medication and did not pursue the manipulation and injection of the right shoulder that was scheduled by his physician. While Plaintiff testified that he did not undergo this injection on the advice of his physical therapist, but this assertion is unsubstantiated and a reasonable fact-finder could question the severity of an impairment and also the credibility of a claimant who disregards the existing advice of a treating for physician for that of a physical therapist. Finally, ALJ Engelman could appropriately dismiss Dr. de Bari's conclusory determination that Plaintiff was disabled and could never return to substantial work. Such determinations are reserved for the Commissioner who factors in expert vocational testimony, and are not the purview of a physician.

Accordingly, ALJ Engelman could reasonably conclude that contrary to the analysis of Dr. de Bari, Plaintiff does not meet the disability requirements set forth in Section 216(I) of the Social Security Act.

## 2. *Plaintiff's Credibility:*

Plaintiff next argues that the ALJ's credibility finding is not supported by the record. Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific. The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

ALJ Engelman found Plaintiff could perform light work with certain exertional limitations. The ALJ is entitled to make his own credibility assessment so long as he evaluates Plaintiff's allegations of symptoms and limitations in light of the record as a whole (R. 17-22). 20 C.F.R. §§ 404.1529(c), 416.929(c). Here, this included reviewing Plaintiff's detailed hearing testimony in light of a larger medical record than that reviewed by the state agency doctor or Dr. de Bari.

ALJ Engelman had substantial evidence to discredit Plaintiff's subjective testimony. While Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, ALJ Engelman found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. As the ALJ noted, Plaintiff's EMG examination revealed normal strength in both upper extremities and there was no electrodiagnostic evidence of radiculopathy affecting either upper extremity (R. 18). Plaintiff shaved, dressed, cared for his grandchildren and cut his food (R. 19). The ALJ concluded that these activities indicate that Plaintiff had only moderate restrictions in activities of daily living.

Further, the ALJ found that the medical record, including hearing testimony, did not support Plaintiff's claims of a RFC precluding any work. Plaintiff has not undergone further surgery, no aggressive treatments have been scheduled and clinical diagnoses have shown improvement or no additional problems.

### 3. *Inaccurate Hypothetical:*

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because he never included all of Plaintiff's impairments and limitations. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant

can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.* (citations omitted).

ALJ Engelman in his questions to VE Findora adequately described Plaintiff's physical condition. The ALJ proffered a hypothetical individual with Plaintiff's age, education, and work experience, who had limited use of his right arm and shoulder such that he could not do work above shoulder level, had limited movement, could not lift more than ten pounds, and could not use the affected arm more than occasionally; the ALJ also included in the hypothetical question to the VE the need for a sit/stand option (R. 204). VE Findora stated that there existed 17,000 jobs in the lower peninsula of Michigan which such a person could perform.

Based on the testimony of VE Findora, a reasonable ALJ could conclude that there existed sufficient jobs which Plaintiff could perform even though he could not engage in any of his past relevant work.

### III.  RECOMMENDATION:

For the reasons stated above, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's motion be **DENIED**. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of

15

a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Note: any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

DATED: January 4, 2008        s/ Steven D. Pepe
                                        STEVEN D. PEPE
                                        United States Magistrate Judge

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 4, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298